Filed 12/20/24  Pourteymour v. First Foundation Bank CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| RAMIN POURTEYMOUR, Individually and as Trustee, etc., | D082596 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2021-00040754-CU-OR-CTL) |
| FIRST FOUNDATION BANK et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Omnum Law and Benjamin Galdston for Plaintiff and Appellant.

Wood Smith Henning & Berman, Stephen M. Caine, Frances M. O'Meara, and Lauren G. Kane for Defendant and Respondent Scott Albrecht.

Frandzel Robins Bloom & Csato, Hal D. Goldflam, and Thomas M. Robins III for Defendant and Respondent First Foundation Bank.

## I. INTRODUCTION

Ramin Pourteymour sued his lender, First Foundation Bank (FFB) and its outside attorney, Scott Albrecht, for wrongful foreclosure. The trial court struck all causes of action against Albrecht under the anti-SLAPP statute,[1] and Pourteymour appeals from that order. Pourteymour argues the anti-SLAPP statute does not apply because the causes of actions against Albrecht arise from a nonjudicial foreclosure, not Pourteymour's pending bankruptcy or the current action. Pourteymour similarly asserts the trial court in its anti-SLAPP analysis misapplied the litigation privilege in finding Pourteymour unable to show probable success on his claims. We disagree and affirm the order.

## II. BACKGROUND

In 2014, Pourteymour obtained a $4.5 million loan and $3 million line of credit from FFB. Both were secured by his residence on Black Gold Road in La Jolla (Black Gold), with the $4.5 million loan having first priority. FFB also loaned Pourteymour $2.653 million secured by a La Jolla residence on Box Canyon Road (Box Canyon), and $1.6 million secured by a commercial building in Pennsylvania.

In March of 2020, as COVID-19 caused a widespread economic slowdown in the US, Pourteymour's income declined significantly because his tenants stopped paying rent.!(1 AA 20)! Pourteymour contacted FFB to

---

[1] "Code of Civil Procedure section 425.16 provides a procedure for the early dismissal of what are commonly known as SLAPP suits (strategic lawsuits against public participation)—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.) All further undesignated statutory references are to the Code of Civil Procedure.

obtain financial hardship relief. He received conflicting responses from several FFB representatives about whether FFB would extend assistance. On March 17, 2020, Pourteymour stopped making payments on the Black Gold and Box Canyon loans.

In July 2020, Pourteymour communicated through his bankruptcy lawyer, David Speckman, with FFB's lawyer, Albrecht. The first communication was an email from Speckman dated July 3, 2020. It informed Albrecht that Pourteymour was "preparing a Chapter 11 bankruptcy," but welcomed first an opportunity to discuss Pourteymour's secured loans. On July 6, 2020, Speckman and Albrecht discussed potential settlement, with Albrecht informing Speckman that FFB was preparing to record a notice of default on Black Gold.

On July 9 Speckman sent a follow-up email to Albrecht, under the subject line "SETTLEMENT COMMUNICATION," stating the "communication [was] sent in furtherance of our ongoing settlement discussions." In that email, Speckman proposed modifying the terms of the two Black Gold loans and the Box Canyon loan in exchange for Pourteymour bringing current the senior Black Gold loan and the Box Canyon loan. Speckman asked that FFB refrain from recording the notice of default for 30 days so they could continue negotiating. Speckman asserted the notice of default would likely cause Pourteymour to proceed with bankruptcy and stay the foreclosure. Speckman also attached Pourteymour's draft bankruptcy schedules.

Speckman and Albrecht were unable to reach an agreement, and on July 10, 2020, FFB recorded notices of default regarding the junior Black Gold loan and the Box Canyon loan. FFB then recorded a notice of sale on

3

October 15, 2020, setting the foreclosure on the Black Gold junior lien for November 9, 2020.

Between October 15 and 30, Speckman asked Albrecht for COVID-19 financial relief, foreclosure avoidance options, and reinstatement amounts.[2] Albrecht agreed to discuss Speckman's requests and proposals with FFB, but Albrecht never provided the information Speckman requested.[3]

On October 27, Speckman provided Albrecht with a "final proposal" regarding the liens, again using the subject line "SETTLEMENT COMMUNCIATION." He stated Pourteymour would be filing for bankruptcy next week, and he "expect[ed] to propose a chapter 11 plan which will 'strip' the junior deed of trust off Blackgold [sic] and cramdown" the senior Black Gold loan and the Box Canyon loan to the respective properties' fair market values.[4] Speckman again proposed modifying the terms of the three loans, which he posited would "pay FFB far more money tha[n] [he] anticipate[d] it would receive in the chapter 11 bankruptcy." On November 2, Speckman suggested mediation, with Pourteymour first paying $15,000 against the loans. Albrecht communicated FFB's rejection of both proposals.

---

[2]  "A debtor on a loan secured by a deed of trust on real property has at least two ways under state law to prevent a foreclosure sale. He may either reinstate, or cure, the loan by bringing his payments current no later than five business days before the scheduled sale [citation], or he may redeem, or pay off, the loan by paying off the entire amount owed before the sale occurs." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 777–778 (*Crossroads*).)

[3]  Albrecht declared this conversation never took place, but as discussed below, our standard of review requires that we accept Pourteymour's declaration regarding this exchange as true.

[4]  By this time the County of San Diego had recorded its own liens against Black Gold and Box Canyon.

Pourteymour filed for Chapter 11 bankruptcy on November 6, 2020, three days prior to the scheduled foreclosure sale of his properties. Pourteymour wished primarily to reorganize the debts secured by Black Gold and Box Canyon. Pourteymour alleged a portion of the first lien and the entire second lien on Black Gold were unsecured, referring to the second lien as disputed. He also alleged the Box Canyon lien was only partially secured.

FFB filed four proofs of claim in the bankruptcy case, one for each of its loans to Pourteymour. It also filed a competing Chapter 11 plan that included liquidation of Black Gold.

Pourteymour continued negotiating with FFB through Albrecht, asking on August 1, 2021, for the amounts necessary to bring his loans current and if his arrearages could be deferred until the end of the loans.[5] Albrecht stated he would confer with FFB but did not provide reinstatement figures or foreclosure options.

On September 7, 2021, the bankruptcy court granted FFB relief from the automatic stay regarding the Black Gold property. However, pursuant to Federal Rules of Bankruptcy Procedure, rule 4001(a)(3) (Rule 4001(a)(3)), the order was not final until September 22, 2021.

Speckman emailed Albrecht on September 7, 2021, asking for the sale date for Black Gold and the reinstatement amount for the junior lien that was in foreclosure. Responding that same day, Albrecht stated Pourteymour's right to reinstate was not extended by the bankruptcy and had expired; the foreclosure sale was set for September 13, 2021.

The sale date got postponed, and on September 17, 2021, Patrick Herman, another attorney for Pourteymour, emailed Albrecht. Herman

---

[5]     Previously, on July 9, 2020, FFB provided loan payoff information to Pourteymour.

asserted if the Black Gold foreclosure proceeded, Pourteymour could sue FFB for failing to provide reinstatement amounts when requested. Herman asked for postponement of the sale, current reinstatement figures, and FFB's intended action. Albrecht responded on September 20 stating, "We respectfully disagree."

On September 21, 2021, under the subject line "Settlement Communication," Speckman stated Pourteymour would pay off all four FFB loans in exchange for an accurate payoff demand for each property and postponement of the sale. Through a series of emails in response that same day, Albrecht conveyed FFB's reluctance, demanding additional terms and providing "rough unofficial payoff principal and interest amounts" for the four loans.

The trustee's sale ultimately went forward on September 22, 2021, at which FFB obtained title to Black Gold.

Pourteymour sued FFB for wrongful foreclosure the next day, initiating the underlying case in this matter. In the operative complaint[6] filed February 17, 2023, Pourteymour added Albrecht as a defendant and asserted five causes of action against him: violation of Civil Code section 2924c; violation of the California Homeowner Bill of Rights (Civ. Code, § 2923.4 et seq.; HBOR); breach of the covenant of good faith and fair dealing; negligence per se; and unlawful business practices.[7]

---

[6]    Pourteymour's first amended complaint.

[7]    Pourteymour also asserted these causes of action, as well as an additional one for violating the COVID-19 Small Landlord and Homeowner Relief Act of 2020 (Civ. Code, § 3273.01 et seq.), against FFB and its chief operating officer.

The Civil Code section 2924c cause of action alleged Albrecht violated Pourteymour's rights by not providing Back Gold reinstatement figures when requested. It also alleged Albrecht ensured Pourteymour would not be able to reinstate the junior Black Gold loan after the bankruptcy by instructing the trustee to repeatedly postpone the foreclosure sale in increments of less than five business days.[8] The HBOR cause of action alleged that Albrecht failed to ensure Pourteymour was considered for foreclosure prevention alternatives. As for the remaining causes of action against Albrecht, Pourteymour based them on the same conduct as the first two causes of action.

On October 7, 2021, FFB removed the wrongful foreclosure case to the bankruptcy court. On December 27, 2021, the bankruptcy court granted Pourteymour's motion to dismiss the bankruptcy case over FFB's objection. All four of FFB's proofs of claim and its liquidation plan remained pending and in dispute until then. Shortly afterwards, the bankruptcy court remanded the unlawful foreclosure case back to the San Diego County Superior Court.

On June 30, 2023, the trial court granted Albrecht's anti-SLAPP motion to strike all causes of action against him. Relying on *Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, *supra*, 13 Cal.App.5th 757, the court found Albrecht's actions protected by the anti-SLAPP statute because they related to Pourteymour's bankruptcy and the instant case, including settlement communications in advance of the bankruptcy. For the

---

[8]  Civil Code section 2924c, subdivision (e), states in relevant part that if a scheduled foreclosure sale is postponed "for a period that *exceeds* five business days . . . then the right of reinstatement is revived as of the date of postponement and shall continue from that date until five business days prior to the date of sale declared at the time of the postponement." (Italics added.)

7

same reasons, the court determined Pourteymour did not show a likelihood of success on his claims because Albrecht's conduct fell within the litigation privilege under Civil Code section 47, subdivision (b).[9]  Pourteymour's timely appeal followed.

## III. DISCUSSION

Pourteymour challenges both prongs of the trial court's anti-SLAPP analysis, asserting his claims against Albrecht arise from unprotected nonjudicial foreclosure activity.  We disagree and affirm the order.

### A.     Standard of Review

A trial court reviews an anti-SLAPP motion "using a two-prong test: (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation]; and, if it has, (2) has the nonmoving party demonstrated that the challenged cause of action has ' "minimal merit" ' by making 'a prima facie factual showing sufficient to sustain' a judgment in its favor?"  (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021–1022.)

"We review a trial court's ruling on a special motion to strike pursuant to section 425.16 under the de novo standard.  [Citations.]  'In other words, we employ the same two-pronged procedure as the trial court in determining

---

[9]     The trial court made two additional rulings we do not address. First, as an independent ground for finding Pourteymour did not show a probability of prevailing, the court found Pourteymour violated Civil Code section 1714.10's requirements for alleging an attorney/client conspiracy.  We need not reach that issue based on our finding that the litigation privilege applies.  Second, FFB joined in Albrecht's anti-SLAPP motion, and the trial court granted the motion as to FFB to the extent Albrecht's actions are imputed to FFB.  Pourteymour does not argue that portion of the ruling was incorrect; therefore, we do not consider it.  (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.)

whether the anti-SLAPP motion was properly granted.' " (*Geragos v. Abelyan, supra,* 88 Cal.App.5th at p. 1020.)  "We consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Ibid.*)  In so doing, "we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law." (*Ibid.*)

## B.     First Prong:  The Causes of Action Against Albrecht Arise from Protected Activity

Pourteymour asserts all five of his causes of action against Albrecht are based on Albrecht withholding reinstatement amounts and loss mitigation options, and depriving Pourteymour's reinstatement rights through serial postponement of the trustee's sale.  He claims these acts were not related to the bankruptcy proceedings and were not settlement communications.  Instead, he argues these acts were related to FFB's nonjudicial foreclosure, which is not subject to anti-SLAPP protection and distinguishes this case from *Crossroads.*  He further contends Albrecht's actions were noncommunicative (that is, he did not respond at all) and illegal, preventing anti-SLAPP protection.  We disagree.[10]

Protected activity includes "any written or oral statement or writing made in connection with an issue under consideration or review by

---

[10]     We summarily reject two additional arguments raised by Pourteymour.  First, he claims Albrecht's motion failed to identify which of the complaint's allegations invoked anti-SLAPP protection.  We disagree because the motion was directed at "all of the allegations against Mr. Albrecht," and it sufficiently explained how each challenged cause of action arose from protected litigation-related activity.  Second, he criticizes the trial court's analysis as superficial, which is irrelevant under our independent review.

a . . . judicial body." (§ 425.16, subd. (e)(2).) "[C]ourts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' " (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113.)

" '[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute.' " (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210.) "Communications in the course of settlement negotiations are protected activity within the scope of section 425.16 . . . even against allegations of fraudulent promises made during the settlement process." (*Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 123, citations omitted.) The protection also extends to alleged civil statutory violations, as well as communications in anticipation of litigation. (*Crossroads, supra,* 13 Cal.App.5th at pp. 779–782, 784.)

For example, in *Crossroads*, Fannie Mae initiated nonjudicial foreclosure proceedings against an apartment building owner, the owner filed for bankruptcy, and after Fannie Mae obtained relief from the bankruptcy stay, it foreclosed on the apartment building through a trustee's sale. (*Crossroads, supra,* 13 Cal.App.5th at pp. 766–771.) The owner sued Fannie Mae alleging Civil Code section 2924c violations for failing to provide requested reinstatement figures and refusing tenders to cure the default or pay the loan in full. (*Id.* at pp. 771–772.) The owner requested reinstatement figures both before and after the bankruptcy court granted Fannie Mae's stay relief. (*Id.* at p. 778.) The owner's attempted tenders occurred during the same period, as well as before the bankruptcy case. (*Id.* at pp. 783–784.)

10

Acknowledging that section 425.16 does not typically apply to nonjudicial foreclosure, the court in *Crossroads* nonetheless found the statute applied because the challenged acts related to the owner's bankruptcy proceeding. (*Crossroads, supra*, 13 Cal.App.5th at p. 778.) It determined that section 425.16 protected Fannie Mae's failure to disclose reinstatement amounts prior to automatic stay relief because those amounts were at issue in the bankruptcy proceeding, and the statute covers expressive omissions in litigation or settlement. (*Crossroads,* at pp. 779–782 & fn. 9.) Fannie Mae's post automatic stay relief non-disclosures were also protected because the bankruptcy case remained pending and the owner's requests for the cure amounts were part of settlement efforts in the matter. (*Id.* at p. 782.) Similarly, the court found rejection of the tenders were protected settlement activity, including the tender rejected before the owner filed for bankruptcy, because Fannie Mae rejected Crossroad's offer in anticipation of that litigation. (*Id.* at pp. 783–784.)

Here, we find significant similarities with *Crossroads*. The parties' filings in the bankruptcy case put at issue FFB's ability to foreclose and the amounts it could recover on its four loans to Pourteymour. By seeking to reorganize the debts on Black Gold and Box Canyon, Pourteymour asked the bankruptcy court to block foreclosure and reinstate the loans on new terms. On the other hand, FFB sought liquidation of Black Gold and enforcement of its loans, including any unsecured amounts. As we explain, Albrecht's challenged acts related to those issues and their settlement, and they occurred while the bankruptcy proceeding was anticipated or pending. The challenged acts also relate to settlement of the threatened lawsuit in this case.

11

As acknowledged in Pourteymour's complaint, Albrecht acted as FFB's attorney of record at all relevant times. Pourteymour's first communication with Albrecht on July 3, 2020, stated Pourteymour was preparing to file for bankruptcy, leading Speckman and Albrecht to discuss settlement options to avoid that proceeding. Those discussions included Speckman's "stripping" and "cramdown" proposals regarding the Black Gold and Box Canyon loans, which were ultimately reflected in Pourteymour's bankruptcy petition. Speckman's initial request for reinstatement amounts and foreclosure avoidance options was intertwined with these settlement discussions, providing a potential resolution of the parties' forthcoming bankruptcy filings. In agreeing to convey the request to FFB but then not providing the requested information to Pourteymour, Albrecht was merely communicating FFB's position in the dispute.

Pourteymour's August 1, 2021, reinstatement request was after he filed for bankruptcy and in conjunction with his proposal that FFB defer all arrearages until the end of the loans. Pourteymour was attempting to thwart FFB's ability to foreclose on Black Gold, which was an issue in the bankruptcy proceeding. Albrecht's failure to respond conveyed FFB's rejection of that attempt to settle.

The bankruptcy court granted FFB relief from the automatic stay on September 7, 2021, but that was not the end of the bankruptcy proceeding or FFB's involvement with it. That relief order became final on September 22, 2021 (Rule 4001(a)(3)), and the bankruptcy case, including FFB's proofs of claim and liquidation plan, remained pending until December 27, 2021. Albrecht's challenged acts on September 7 were connected to the ongoing bankruptcy proceeding, specifically the stay relief order the bankruptcy court granted that day. When Albrecht responded to Speckman's email providing

12

the date of the sale and asserting Pourteymour's reinstatement rights were not extended by the bankruptcy, Albrecht was providing Pourteymour FFB's position regarding the not yet final stay relief order and FFB's rejection of continued settlement attempts. Similarly, when Albrecht allegedly instructed the trustee to serially postpone the sale, that would have been legal advice to FFB's agent regarding the interplay between the effective date of the bankruptcy court's order and Civil Code section 2924c, subdivision (e).

In Herman's September 17 email to Albrecht, he asked Albrecht to postpone the trustee's sale so Pourteymour could reinstate. Acknowledging FFB's stay relief was not yet effective, Herman insinuated Pourteymour would sue FFB for reinstatement request violations if the sale was not delayed. Indeed, Pourteymour filed his lawsuit six days later. While this postpone-or-get-sued email requested reinstatement amounts, it was nonetheless a settlement attempt regarding the not yet final stay relief and the then-anticipated current action. On September 20, Albrecht declined this offer on FFB's behalf.

On September 21, Speckman stated Pourteymour would pay off all his loans in exchange for FFB providing payoff amounts and postponing the sale, acknowledging his proposal would likely require court approval. Albrecht's responses the same day, suggesting additional terms and providing rough payoff amounts, were merely FFB's counteroffers.

Based on the foregoing, all Albrecht's challenged acts arise from his representation of FFB in the bankruptcy proceeding and in this case. Those acts involved communicating issues raised by the two proceedings and their potential settlement, and they occurred while the two proceedings were either anticipated or pending. Because Pourteymour's causes of action against Albrecht would not exist in the absence of this protected litigation

13

and settlement activity, section 425.16 applies. (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1024 [" ' "[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16." ' "].)

As for the claimed illegality of Albrecht's behavior, that does not defeat section 425.16's application. To invoke the narrow anti-SLAPP exception for illegality, the challenged conduct must be criminal. (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 151; see also, *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 ["a plaintiff's complaint *always* alleges a defendant engaged in illegal conduct in that it violated some common law standard of conduct or statutory prohibition, giving rise to liability, and we decline to give plaintiffs a tool for avoiding the application of the anti-SLAPP statute merely by showing any statutory violation"].) Pourteymour cannot rely on that exception because he only alleges common law and civil statutory violations.

In sum, Albrecht carried his burden on prong one of the anti-SLAPP analysis.

## C. *Second Prong: The Litigation Privilege Precludes Pourteymour from Prevailing on the Merits*

Pourteymour argues he showed the probable validity of his claims. He asserts Albrecht's acts or omissions were fraudulent, and connected to nonjudicial foreclosure proceedings, barring protection under the litigation privilege. We disagree.

"At this step, 'the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Crossroads, supra,* 13 Cal.App.5th at p. 776.) " 'The court determines only whether the

14

plaintiff has made a prima facie showing of facts that would support a judgment if proved at trial.' " (*Id*. at p. 785.)

The litigation privilege, found in Civil Code section 47, subdivision (b)(2), is " 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.' " (*Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc*. (2021) 59 Cal.App.5th 995, 1006.) " 'The privilege "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." ' " (*Crossroads, supra,* 13 Cal.App.5th at p. 786.)

The litigation privilege " ' "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." ' " (*Crossroads, supra,* 13 Cal.App.5th at pp. 785–786.)  It extends to communications outside the courtroom, as well as those before or after the underlying proceedings. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)

*Crossroads* is once again instructive.  Acknowledging the overlap between the litigation privilege and anti-SLAPP protection under section 425.16, subdivision (e)(2), the court readily found Fannie Mae's conduct discussed above to be privileged.  (*Crossroads, supra,* 13 Cal.App.5th at p. 787.)  The privilege applied because Fannie Mae's statements and omissions were "made in settlement discussions in the bankruptcy action and concerning issues under review in the bankruptcy action." (*Ibid*.)  The court noted that "[t]he litigation privilege also protects a defendant's silence having some relation to a judicial proceeding when the silence is communicative." (*Id*. at p. 786.)  It thus determined "Fannie Mae's silent refusals to accept

15

tender were also privileged as they communicated Fannie Mae's rejection of the settlement offers and were responses to [the owner's] scheme to have the court approve its plan in lieu of proceeding through nonjudicial foreclosure." (*Id.* at p. 787.)

The same analysis applies here. Pourteymour's requests for reinstatement and foreclosure avoidance were made during settlement discussions regarding the bankruptcy proceeding and the anticipated action in this case, and concerned issues raised in both proceedings. Acting on behalf of his client, Albrecht's responses, including his silence, communicated both FFB's rejection of Pourteymour's settlement offers, and FFB's position in both proceedings that it was entitled to liquidate Black Gold to satisfy Pourteymour's debt. As for postponement of the trustee's sale, Albrecht's alleged misconduct was instructing the trustee on foreclosure procedures that complied with the bankruptcy court's stay relief order. That was a communicative act to carry out the relief FFB just obtained in the bankruptcy case.[11] Consequently, the litigation privilege applies.

Pourteymour's assertion that Albrecht's acted fraudulently is also misplaced. "The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication . . . .' " (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322.)

---

[11]    We also note that Pourteymour did not provide any evidence showing that Albrecht directed serial postponements of the sale as alleged in the complaint. We overrule Albrecht's objection to Pourteymour's citation of the trial court's request directing Albrecht to explain the serial postponements. Although within a tentative ruling, the request was not superseded by the trial court's ultimate ruling. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268.)

16

Based on the foregoing, the litigation privilege covers Albrecht's challenged acts, precluding Pourteymour from showing probable success on the merits.  The trial court properly granted the anti-SLAPP motion.

## IV. DISPOSITION

The order is affirmed.  Albrecht is awarded costs on appeal.


RUBIN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


KELETY, J.

17