Filed 9/7/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RAFAEL V. SUAREZ, | B264511 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC544554) |
| v. | |
| TRIGG LABORATORIES, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth Feffer, Judge. Affirmed.

Law Office of Greg May and Greg May, for Plaintiff and Appellant.

Mitchell Silberberg & Knupp and Mark T. Hiraide for Defendant and Respondent.

_____

Rafael Suarez challenges the grant of Trigg Laboratories' special motion to strike pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] We affirm the order.

FACTUAL AND PROCEDURAL SUMMARY

Suarez, a business consultant, entered into an arrangement with Trigg Laboratories (Trigg) and its principal owner Michael Trygstad in April 2005, with the goal of increasing company profit and growth to prepare Trigg for an eventual sale. The parties initially expected the arrangement to be short term, and Suarez was paid $125 an hour. After several months, the scope of the work expanded to include raising additional capital. The parties agreed Suarez would receive five percent of new capital raised and seven percent of any sale of Trigg, or if neither occurred, he would receive just a monthly retainer. This was not reduced to writing.

Suarez helped Trigg obtain additional capital, which would have entitled him to $75,000 under their agreement. At Trygstad's request, he agreed to defer that payment in exchange for an increase of the percentage he would eventually receive for an "end transaction." That percentage was later increased to 13.5 percent.

In an April 2007 e-mail to Suarez, Trygstad indicated he did not want to sell the company for less than $40 million. He also told Suarez his potential compensation upon sale was excessive. Suarez grew increasingly concerned about continuing to work for Trigg with only an oral agreement, and in June 2007, he sought a formal written agreement. Trygstad refused, and one week later terminated Suarez's employment. On September 24, 2007, Suarez filed suit against Trigg for quantum meruit, seeking to recover the fair value of the services he had rendered over the course of the Trigg engagement. (*Suarez v. Trigg Laboratories*, *Inc*. (Super. Ct., L.A. County, 2007, No. 378025) (*Suarez I*).)

_____

[1]     SLAPP is an acronym for "strategic lawsuit against public participation." All statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

Meanwhile, Trygstad engaged Bell Holdings, Inc. and George Segal Associates (GSA) to assist in selling Trigg. Beginning on June 20, 2008, a series of e-mails was exchanged by Bell, Trygstad, and GSA. The subject was listed as: "letter of intent Ansell." Bell informed Trygstad that GSA had reported that a prospective investor, Ansell, was proceeding with a memorandum of intent, which was expected the following week. Ansell had confirmed its interest in Trigg and its desire to "do a deal" as soon as possible. Trygstad responded to Bell: "Just a reminder that the letter of intent cannot come to me directly. Must go to the attorney you referred to keep the contents within attorney client privilege for the Rafael case." On June 22, 2008, Bell e-mailed GSA: "Re: Correspondence/communications regarding Trigg. [¶] NO COMMUNICATIONS OR CORRESPONDENCE FROM GSA DIRECTLY WITH MICHAEL OR TRIGG COMPANY. All communications directly with me or Trigg attorney . . . (do not copy Michael). DO NOT SEN[D] MICHAEL or Trigg company . . . the letter of intent o[r] any other correspondence as per his request." The letter of intent was sent, but Trigg was not sold to Ansell or to any other buyer.

These e-mails, sent between June 20 to 22, 2008, preceded Suarez's July 16, 2008 mediation with Trigg. Suarez was unaware of the potential sale of Trigg when he agreed to settle the case for $175,000.

Trigg terminated its consulting relationships with Bell and GSA in February and March 2009, respectively. During subsequent litigation between Trigg and Bell, counsel for Bell obtained the e-mails regarding the letter of intent from Ansell and Trygstad's instructions not to send any communications to him. Suarez learned of these e-mails in late 2010. In January 2011, his attorney sent letters to Trigg's counsel, claiming that the law firm and Trigg had wrongfully concealed the Ansell letter of intent from Suarez. Suarez's attorney received no response.

Suarez filed this action against Trigg in May 2014, seeking rescission of the settlement agreement in *Suarez I* based on Trigg's fraudulent concealment of the prospects for sale of the company, and quantum meruit. Trigg filed a special motion to

3

strike pursuant to the anti-SLAPP statute, asserting Suarez's claims arise out of communications that occurred during the course of *Suarez I*. The trial court found Suarez's causes of action arose from litigation activities protected by the anti-SLAPP statute and that he failed to make a showing of likelihood of success on the merits. The action was dismissed without leave to amend. Suarez appeals.

DISCUSSION

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

As relevant here, an "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue'" includes "any written or oral statement or writing made in connection with an issue under consideration or review" by a judicial body. (§ 425.16, subd. (e)(2).) "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-78.)

Analysis of an anti-SLAPP motion is two-fold. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67.) In making these determinations, the court considers the pleadings and supporting and opposing affidavits. (*Ibid*.) We review an order granting an anti-SLAPP motion de novo; we engage in the same process as the trial court to determine if the parties have

4

satisfied their respective burdens.  (*Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 728.)

Appellant alleged in his pleading that while *Suarez I* was pending, respondent was notified that a prospective buyer would be submitting a letter of intent "to purchase Trigg for $24 million cash, plus a $16 million earn out.  Such an offer would give Trigg an implied enterprise value of approximately $40 million.  Trygstad knew that disclosure of the [letter of intent] to Plaintiff while the Quantum Meruit Action was pending would be extremely harmful to Trigg's negotiating position in the Quantum Meruit Action.  Plaintiff is informed and believes that Trygstad directed that the existence of the [letter of intent] be suppressed and not disclosed to Plaintiff.  This was part of a fraudulent strategy by Trigg to protect the [letter of intent] from being disclosed under the guise of the attorney-client privilege and other acts of concealment."  As a result of this "evasion," appellant alleged he was deprived of material information that should have been disclosed, and was induced to settle his claims in *Suarez I* for a fraction of their value.

Respondent asserts in its anti-SLAPP motion that all of appellant's claims in this action arose out of communications that occurred during the course of the settlement of *Suarez I,* the underlying action for quantum meruit, and thus constitute petitioning activity protected under section 425.16.  Communications in the course of settlement negotiations are protected activity within the scope of section 425.16.  (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963; *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 907.)  The protection applies, even against allegations of fraudulent promises made during the settlement process.  (*Navellier*, *supra*, 29 Cal.4th at p. 90; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 842.)

Appellant argues this action is not premised on respondent's statements, but its active concealment and nondisclosure of the anticipated letter of intent from Ansell.  In opposing the motion, appellant relied on the email from respondent to Bell, directing that all correspondence related to the expected letter of intent from Ansell be sent to his attorney, not to respondent, "to keep the contents within attorney client privilege for the

5

Rafael case." This was litigation-related activity, expressly aimed at appellant Rafael Suarez's case. So was respondent's subsequent silence with respect to the potential sale during settlement discussions with appellant. As appellant made clear in his declaration, the claim for rescission was based on respondent's failure to disclose and his concealment of the existence of the letter of intent from Ansell prior to the time appellant agreed to the settlement in *Suarez I*.

In *Navallier*, *supra*, 29 Cal.4th at page 89, anti-SLAPP protection was applied to an action alleging "misrepresentations and omissions" in connection with the signing of a release in an underlying federal action. Defendant allegedly failed to disclose that he was secretly not in agreement with the terms of the release, which induced plaintiffs to file an amended federal action; defendant then claimed he did not release, and did not intend to release his claims. The Supreme Court found that each of defendant's "acts or (omissions) . . . falls squarely within the plain language of the anti-SLAPP statute." (*Id*. at p. 90.) Misrepresentation or failure to disclose can be protected petitioning activity for purposes of section 425.16.

This is consistent with established free speech jurisprudence. The right to freedom of speech under the First Amendment to the United States Constitution and under Article I, section 2 of the California Constitution, encompasses what a speaker chooses to say, and what a speaker chooses not to say; it is a right to speak freely and also a right to refrain from doing so at all. (*Beeman v. Anthem Prescription Management, LLC* (2013) 58 Cal.4th 329, 342; *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 491.)

The cases relied on by appellant are factually distinct. For example, in *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, plaintiffs sued their former expert witness for giving false deposition testimony in the underlying wrongful death action and failing to continue to act as an independent expert in the prosecution of that case by entering into a business relationship with plaintiffs' former lawyer to develop a product based on information obtained while still acting as plaintiffs' expert. (*Id*. at pp. 575-576.) The court found this was not protected activity under the anti-SLAPP statute: "The central

6

subject of the complaint against appellant is not an exercise of free speech or petition but the negligence or fraud inherent in his act of entering into a business relationship to respondents' detriment." (*Id*. at p. 580.) This reasoning has no counterpart in appellant Suarez's action against respondent Trigg. Respondent's alleged wrongdoing was concealing or failing to disclose the existence of a letter of intent to purchase Trigg in order to prevent appellant from obtaining a more favorable settlement in *Suarez I*. The alleged wrongdoing was directed squarely at the underlying litigation.

In *Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, the defendants purchased confidential documents from plaintiff's former fundraiser, then used those documents to prosecute a complaint against plaintiff for alleged election law violations. The court reversed the grant of defendants' special motion to strike: "Rather than focusing on the gravamen of this action, which was that the Pebble defendants allegedly purchased the Coalition's confidential documents, the trial court focused on the injury to the Coalition, which was forced to defend itself in the Alaska Public Offices Commission proceeding. However, the gravamen of an action is the *allegedly wrongful and injury-producing conduct*, not the damage which flows from such conduct. Here, the gravamen of the Coalition's action is the allegation that the Pebble defendants wrongfully purchased its confidential documents. Said purchase was not an act by defendants in furtherance of their right of petition or free speech." (*Id*. at p. 387.) In our case, the allegedly wrongful conduct—concealing or failing to disclose the potential purchase—occurred as an explicit part of the settlement strategy for *Suarez I*.

In *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, a law firm represented United States Fire in a lawsuit by its insured over the scope of United States Fire's duty to defend and indemnify the insured against asbestos-related claims. The firm then represented a group of asbestos creditors seeking to maximize insurance benefits from various insurers, including United States Fire. The court held United States Fire's action to enjoin the firm from the

conflicted representation was not protected activity under the anti-SLAPP statute, explaining that the principal thrust of the misconduct alleged was the law firm's acceptance of representation adverse to the plaintiff, not the actual disclosure of confidential information it had obtained during its representation of United States Fire. Reference to protected activity was "only incidental to the principal thrust of the complaint." (*Id*. at p. 1628; see also *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1391, holding that action alleging concealment of dual representation is not protected activity: "That the concealment occurred in the context of litigation does not change this result, as it is clear that any litigation activity is only incidental to plaintiffs allegations of wrongdoing." (*Coretronic Corp. v. Cozen O'Connor*, at p. 1391.) In contrast, respondent's alleged concealment in our case was undertaken specifically to affect the settlement of the *Suarez I* litigation.

*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624 does not aid appellant. In that attorney malpractice action, the conduct from which the action arose was the attorneys' failure to serve timely discovery responses, and failure to comply with two court orders; "the alleged attorney malpractice did not consist of any act in furtherance of anyone's right of petition or free speech, but appellants' negligent *failure* to do so on behalf of their clients." (*Id* at p. 631.) This differs from the allegations of respondent's affirmative nondisclosure and concealment for purposes of affecting settlement in our case.

The activity upon which appellant premises this action is respondent's concealment of and failure to disclose the letter of intent from Ansell prior to the time appellant agreed to settle *Suarez I*. This claim arises from respondent's litigation activity—to keep this information within the attorney-client privilege for purposes of "the Rafael [Suarez] case." And it arises from respondent's protected right of free speech— the right not to speak. The first prong of the anti-SLAPP statute has been satisfied.

Ordinarily we would turn to the second prong of the anti-SLAPP analysis, examining whether the plaintiff's showing, if accepted by the trier of fact, would be

8

sufficient to sustain a favorable judgment. (*Baral v. Schnitt* (August 1, 2016, S255090) ___Cal. 4th ___ [2016 Cal. Lexis 6383].) In this case, however, appellant states in his reply brief that respondent's discussion of this prong should be disregarded because "appellant Suarez raised no issue regarding the second prong." For that reason, we do not reach that issue.

## DISPOSITION

The order of dismissal is affirmed. Respondent is awarded costs on appeal.

**CERTIFIED FOR PUBLICATION.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.