Filed 1/21/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STEPHEN CALLISTER, as Trustee, etc., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> JAMES B. CHURCH & ASSOCIATES, P.C., <br><br> Defendant and Appellant. | D084820 <br><br><br> (Super. Ct. No. PROPS1600025) |

APPEAL from an order of the Superior Court of San Bernardino, Candice Garcia-Rodrigo, Judge.  Affirmed.

Wingert Grebing Brubaker & Juskie, Wingert Grebing Brubaker & Walshok, Charles R. Grebing and Pragya Sharma for Defendant and Appellant.

Lagerlof and Robert A. Bailey for Plaintiffs and Respondents.

# I

## INTRODUCTION

James B. Church & Associates, P.C. (hereafter, the Church Firm or firm) served as legal counsel for Dennis Shogren, the personal representative of the estate of the late Loren R. Kirk, in a contentious probate action. After years of litigation, the parties to the probate action resolved their dispute with a settlement agreement that provided for distributions from the estate to beneficiaries including Barbara Sagehorn (a relative of the decedent) and a group of individuals called the Carter Beneficiaries.[1]

Thereafter, Stephen Callister, as Trustee of the Sagehorn Probate Action Trust, and Charles Bone, attorney-in-fact for the Carter Beneficiaries (hereafter, the petitioners), sued the Church Firm for professional negligence, ordinary negligence, and breach of contract. They alleged the Church Firm negligently failed to file a protective claim for a refund with the Internal Revenue Service (IRS), or to advise its client, Shogren, that the estate should file such a claim. According to the petitioners, a protective claim for a refund would have permitted the estate to deduct millions of dollars of attorney's fees from its estate taxes.

The Church Firm filed a special motion to strike the causes of action under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[2] The trial court

---

[1] The Carter Beneficiaries include Joan Cunningham, William N. Carter, Julia Hansen, Joanna Carter, Carol Marshall, Steven Ray Chentik, Kelli Camp, Leigh Anne Carter-Gigliotti, Richard Carter, Bradley King, Bryan King, Adam D. King, Rowena J. Carter, Hal E. Carter, Marilyn Meserve, Phillip F. Carter, James Michael Carter, Sr., Rosemary Loelkes, Janet Fletcher, and George L. Loelkes, III.

[2] SLAPP is an acronym that refers to a Strategic Lawsuit Against Public Participation. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242.)

denied the motion on grounds the firm did not demonstrate that the causes of action arose from the firm's constitutionally protected free speech or petitioning activities.  The firm now appeals the order denying its anti-SLAPP motion.

Exercising our independent review of the trial court's ruling and the appellate record, we agree that the alleged acts forming the basis of the petitioners' causes of action are not protected activities under the anti-SLAPP law.  Therefore, we affirm the order denying the anti-SLAPP motion.

II

BACKGROUND

A. *Probate Proceedings*

In December 2015, Loren R. Kirk passed away and left behind a sizeable estate.  A friend of the decedent filed a petition for probate of the decedent's purported will and for letters of administration.  The purported will identified the petitioning friend as the primary beneficiary of the estate.  Several of the decedent's heirs objected to the purported will and filed or joined a will contest alleging the purported will was fraudulent or inoperable.

In May 2016, the probate court appointed Dennis Shogren, CPA, as the special administrator of the estate with general powers and full authority to administer the estate.  Shogren retained the Church Firm to serve as his legal counsel in connection with the administration of the estate.

The parties to the probate action litigated the validity of the purported will and the administration of the estate for three years before mediating and entering a settlement agreement in June 2019.  The probate court appointed Shogren as the administrator of the estate and confirmed the settlement agreement in July 2019.  Thereafter, the Church Firm distributed the estate

3

on behalf of Shogren. The probate court closed the estate without an account in January 2021.

B. *Legal Malpractice Proceedings*

In June 2023, the petitioners—Stephen Callister, as Trustee of the Sagehorn Probate Action Trust, and Charles Bone, the attorney-in-fact for the Carter Beneficiaries—filed a petition for damages against the Church Firm, Shogren, and Shogren's accounting firm in the probate court. They sued the Church Firm for professional negligence, ordinary negligence, and breach of the firm's attorney-client agreement with Shogren.

The petition alleges Shogren, as personal representative of the estate, filed an estate tax return with the IRS and paid sizeable taxes from the estate funds. According to the petition, Shogren incurred considerable attorney's fees after filing the tax return, but did not amend the return or file a timely protective claim for a refund on the return to claim the attorney's fees as tax deductions. The attorney's fees were allegedly tax deductible expenses that would have resulted in a tax refund for the estate of $5,000,000 if they had been claimed as deductions. The petition avers the defendants belatedly tried to file an amended or supplemental estate tax return after the applicable statute of limitations had expired, but the IRS rejected the filing as untimely.

Paragraph 14 of the petition, which is incorporated into all three causes of action asserted against the Church Firm, alleges the firm "failed to advise Dennis Shogren to file a protective claim for a refund …." Paragraphs 15 and 18, which are also incorporated into all three causes of action, allege the defendants "fail[ed] to effectively file a protective claim for a refund with the IRS" and "allowed the statute of limitations for amending (or supplementing)

4

the Estate Tax Return to expire without filing a protective claim for a refund."

Under the professional negligence cause of action, Paragraph 25 alleges the Church Firm "failed to advise Dennis Shogren … to make a protective claim for a refund on the Estate Tax Return, or to subsequently file such a claim prior to the expiration of the statute of limitations for amending (or supplementing) the return." Similarly, under the ordinary negligence cause of action, Paragraph 41 alleges the defendants "fail[ed] to file or advis[e] Dennis Shogren as the personal representative of the Estate to file with the IRS an effective protective claim for a refund of estate taxes." Paragraph 46 claims the Church Firm "breached its [contractual] obligations under the agreement by failing to advise Dennis Shogren, as personal representative, to file an effective protective claim for a refund of estate taxes …."

C. *Anti-SLAPP Motion*

In October 2023, the Church Firm filed a special motion to strike the professional negligence, ordinary negligence, and breach of contract causes of action under the anti-SLAPP statute.

In its anti-SLAPP motion, the Church Firm argued the causes of action arose from activities protected by Code of Civil Procedure section 425.16, subdivisions (e)(1) and (e)(2), because they were purportedly based on statements or writings made before, or in connection with an issue under consideration by, a judicial body. Specifically, the firm claimed the causes of action arose from its "acts as attorneys representing Shogren … during Shogren's administration of the [e]state" as part of the probate action. Further, the firm contended the causes of action did not have minimal merit because: (1) the firm owed no legal duty to the petitioners, since they were not clients of the firm; (2) the petitioners were not intended beneficiaries of

5

the engagement contract between the firm and Shogren; and (3) the firm's conduct was protected by the litigation privilege.

Together with its motion, the Church Firm submitted legal filings, probate court orders, and reporter's transcripts from the probate action; written communications between the parties to the probate action; the probate action settlement agreement; and Shogren's written communications with the estate beneficiaries. The firm also filed a declaration from one of its attorneys, Jonathan B. Church, which described the procedural history of the probate action and averred that the firm served as legal counsel for Shogren—not the petitioners—in the probate action.

The petitioners opposed the anti-SLAPP motion. They argued the causes of action did not arise from protected acts because the causes of action were based on the firm's alleged *failure* to act—not the filings or statements the firm made in, or in connection with, the probate action. They also contended the causes of action had minimal merit because the policy considerations, on balance, weighed in favor of recognizing that the firm owed a duty of due care to the petitioners. The petitioners did not respond to the firm's argument concerning the litigation privilege or the firm's claim the petitioners were not intended beneficiaries of the engagement contract.[3]

The Church Firm filed a reply in support of its anti-SLAPP motion. The firm reiterated its stance that the causes of action arose from protected acts because its communications with Shogren about tax deductions (or the alleged lack of communications) were, in the firm's words, "related to" the probate action. Alternatively, the firm claimed the causes of action were

---

[3]     The petitioners did not submit evidence in opposition to the anti-SLAPP motion. However, they included detailed factual allegations in their opposition brief. The Church Firm filed evidentiary objections to the alleged facts recited in the opposition brief, which the court overruled.

based on protected acts because its communications with Shogren were made before, or in connection with, an official IRS proceeding. Further, the firm restated its arguments that the causes of action did not have minimal merit because the firm owed no legal duty to the petitioners, the petitioners were not intended beneficiaries of the firm's engagement contract with Shogren, and the litigation privilege barred the causes of action.

After a hearing, the court denied the anti-SLAPP motion at the first step of the two-step analysis. The court found the Church Firm failed to meet its first-step burden of proving the causes of action arose from constitutionally protected speech or petitioning activities. It reasoned the firm did not identify specific protected communications or communicative acts that formed the basis of the causes of action. According to the court, the firm's alleged *failure* to act or communicate gave rise to the causes of action. Because the court denied the motion at the first step of the analysis, it did not consider whether the petitioners have a probability of success on their causes of action.

## III

## DISCUSSION

### A. *Anti-SLAPP Statute*

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)

"A court evaluates an anti-SLAPP motion in two steps. 'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson, supra*, 7 Cal.5th at p. 884.)

The trial court denied the Church Firm's anti-SLAPP motion after finding that the firm did not satisfy its first-step burden. "The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Wilson, supra*, 7 Cal.5th at p. 884.)

Two categories of protected acts are relevant to the present case. The first encompasses "any written or oral statement or writing made before a … judicial proceeding[] or any other official proceeding authorized by law." (Code Civ. Proc., § 425.16, subd. (e)(1).) The second includes "any written or oral statement or writing made in connection with an issue under consideration or review by a … judicial body[] or any other official proceeding authorized by law." (*Id.*, subd. (e)(2).) Thus, our role at the first step of the

8

analysis is to determine whether the professional negligence, ordinary negligence, and breach of contract causes of action arise from acts included within either or both of these categories of constitutionally protected conduct.

If the Church Firm carries its first-step burden of proving the causes of action arise from protected conduct, we will proceed to the second step of the analysis and determine whether the petitioners established that their causes of action have a probability of success. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) The second step has been described " 'as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed." ' " (*Ibid.*)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

B. *The Causes of Action Did Not Arise from Protected Conduct*

We begin our analysis by assessing whether the causes of action arise from constitutionally protected activity. " 'At the first step, the moving

9

defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them.' [Citation.] After identifying the allegations of protected activity, the defendant must demonstrate the activity alleged falls within one of the four categories described in section 425.16(e). [Citation.] In addition to the pleadings, the court may consider declarations and other evidence presented in order to determine what conduct is being challenged, but not to assess the merit of the claims." (*Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1018.)

The parties disagree about the alleged conduct giving rise to the causes of action. For its part, the Church Firm broadly claims the causes of action are based on the firm's alleged rendering of "legal advice" to its client, Shogren, and its "communications" with Shogren, in connection with the administration of the Kirk estate and the filing of the estate's tax returns. By contrast, the petitioners assert the causes of action have nothing to do with the affirmative advice or communications that took place between the firm and Shogren. Rather, they argue the causes of action are premised on the firm's alleged *failure* to act and its alleged *failure* to advise Shogren about the need to file a timely protective claim for a refund. We conclude the petitioners have the better argument.

The petition for damages is quite clear on this point. In Paragraphs 14 and 15, which are incorporated into all three causes of action, the petition alleges the Church Firm "*failed to advise* Dennis Shogren to file a protective claim for a refund" and "*fail[ed] to effectively file* a protective claim for a refund with the IRS." Paragraph 25 claims the firm breached its purported legal duty to the estate beneficiaries through its "*fail[ure] to advise* Dennis Shogren … to make a protective claim for a refund on the Estate Tax Return, or to subsequently file such a claim" in a timely manner. Similarly,

10

Paragraph 41 avers the firm breached its ostensible legal duty because it *"fail[ed] to file or advis[e]* Dennis Shogren … to file with the IRS an effective protective claim for a refund of estate taxes." Likewise, Paragraph 46 asserts the firm "breached its obligations under [its] agreement by *failing to advise* Dennis Shogren, as personal representative, to file an effective protective claim for a refund of estate taxes …." As these allegations illustrate, all three causes of action are predicated on the Church Firm's alleged failure to file a timely protective claim for a refund and its alleged failure to advise its client to file such a claim.

The Church Firm does not point to any allegations from the petition to substantiate its unsupported claim that the causes of action arise from the "legal advice" it allegedly provided to Shogren, or its communications with Shogren. Rather, the firm argues that the petitioners made "contradictory" statements about the alleged conduct forming the basis of their causes of action. In particular, the firm points to a singular statement from the petitioners' legal brief in opposition to the anti-SLAPP motion, in which the petitioners stated that the firm should be held liable, in part, because "the filing of the estate tax return[] and any legal advice related thereto[] [were] intended to affect the Petitioners as beneficiaries of the Estate[.]"

We reject the Church Firm's contention that this solitary statement from the opposition brief contradicted the allegations of the petition or otherwise muddied the waters about the alleged conduct underpinning the causes of action. The petitioners made the statement just discussed while describing why the relevant public policy considerations, on balance, warranted a recognition that the Church Firm owed a legal duty of care to the petitioners for negligence purposes. It did not in any way undercut the petition's allegations that the firm *breached* its purported legal duty, as well

11

as its contractual commitments, by failing to file a timely protective claim for a refund and failing to advise its client to file such a claim. To repeat—*those are the alleged acts underpinning the causes of action.*[4]

Having identified the alleged conduct giving rise to the causes of action, we turn now to whether the conduct is constitutionally protected speech or petitioning activity. The anti-SLAPP statute protects activity falling within the four categories set forth in Code of Civil Procedure section 425.16, subdivision (e): "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).) As previously noted, the Church Firm argues the causes of action are based on conduct falling within the first two of these categories.

However, under the plain language of the anti-SLAPP statute, "[a] failure to speak cannot fall in any of the first three categories, which protect only 'statement[s] or writing[s],' and not the failure to make them." (*Ratcliff v. The Roman Catholic Archbishop of Los Angeles* (2022) 79 Cal.App.5th 982,

_____

[4] At times, even the Church Firm seems to recognize the causes of action are based on its alleged failure to act or speak, not its affirmative speech or communications with Shogren. In its opening appellate brief, the firm correctly states that the lawsuit "is based on the Church Firm's purported *failure to advise* Shogren to file a protective claim for a refund."

12

1011 (*Ratcliff*).) Thus, we agree with the trial court's finding that the conduct giving rise to all three causes of action—i.e., the Church Firm's alleged *failure to file* a protective claim for a refund and its alleged *failure to advise* its client to file a protective claim for a refund—are not protected speech and petitioning activities within either of the categories on which the firm relies.[5]

Our conclusion is based on the language of the anti-SLAPP statute, but it finds additional support in the case law. For example, in *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, former clients brought a malpractice case against the attorneys who had represented them in a prior civil lawsuit. They based their malpractice case on allegations that the attorneys negligently failed to serve timely discovery responses on the clients' behalf, which resulted in a waiver of their objections, and failed to comply with two court orders requiring them to serve discovery responses without objections, which resulted in the imposition of terminating sanctions against the clients. (*Id.* at p. 631.) The *Jespersen* court affirmed the denial of an anti-SLAPP motion filed by the attorneys. It reasoned the "malpractice did not consist of any act in furtherance of anyone's right of petition or free speech, but [the attorneys'] negligent *failure* to do so on behalf of their clients." (*Ibid*.) According to *Jespersen*, the trial court properly denied the anti-SLAPP motion because the attorneys did not show their "failure to comply with a discovery statute and two court orders … amount[ed] to constitutionally protected speech or petition" activity. (*Id.* at p. 632.)

---

5    "If a failure to speak is protected at all, it must fall within the fourth category, as 'other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' " (*Ratcliff, supra*, 79 Cal.App.5th at p. 1011.) However, the Church Firm has never argued that the fourth category encompasses its alleged failure to file a protective claim for a refund or its alleged failure to advise its client about the need to file such a claim.

13

Similarly, in *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, a company brought a malpractice action against its former attorneys, who had served as counsel for both the company and a corrupt CEO of the company who had looted it of millions of dollars. The action was based, in part, on allegations the attorneys failed to investigate the CEO's misconduct, failed to advise the company's board of directors about conflicts of interest they had stemming from their dual representation of the company and the CEO, and failed to take affirmative action to prevent the CEO's self-dealing conduct. (*Id.* at pp. 1214–1215, 1226–1227.) The *PrediWave* court reversed an order granting the attorneys' anti-SLAPP motion. (*Id.* at p. 1228.) It reasoned that, "[c]learly, defendants' … alleged *failures to act* [were] not statements or writings within the meaning of section 425.16, subdivision (e)." (*PrediWave,* at p. 1227, italics added.) Further, "there was no showing that any of defendants' allegedly wrongful conduct, not consisting of statements or writings, occurred 'in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e)(4).)" (*PrediWave,* at p. 1227.) Therefore, the *PrediWave* court concluded the attorneys did not satisfy their first-prong burden under the anti-SLAPP statute. (*Id.* at p. 1228.)

*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873 buttresses our conclusion as well. In that case, a movie production company filed a cross-complaint for breach of contract against the musician known as Lil' Wayne and his corporation. (*Id.* at p. 880.) The cross-complaint alleged the cross-defendants breached a contract with the movie production company by failing to make Lil' Wayne and others available to sit for interviews for a documentary about Lil' Wayne. (*Ibid.*) After the trial court denied the cross-defendants' special motion to strike the breach of

14

contract cause of action, the *Digerati* court affirmed. (*Id.* at p. 882.) It determined that the cross-defendants did "not show[] that the conduct alleged in … the cross-complaint was in furtherance of their constitutional right of petition or free speech within the meaning of the anti-SLAPP statute …. There [was] no indication that the alleged *failure to appear* for interviews or other conduct alleged … involved any written or oral statement described in section 425.16, subdivision (e) or any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public importance." (*Id.* at pp. 885–886, italics added.)

And, in *Ratcliff, supra*, 79 Cal.App.5th 982, alleged childhood victims of sexual molestation perpetrated by a clergyman brought a negligence case against entities associated with the Roman Catholic Church. They alleged the defendants failed to inform parishes about prior abuse allegations related to the clergyman; failed to convey to nonpriest staff and community members the Church's policy for the prevention of molestation; failed to educate, train, and warn the plaintiffs about sexual abuse; and failed to inform staff who were mandated reporters about their legal duties. (*Id.* at p. 1011.) The defendants moved to strike the negligence claim, the trial court denied the motion, and the *Ratcliff* court affirmed. (*Id.* at p. 1000.) The *Ratcliff* court concluded the alleged conduct forming the basis of the negligence claim—i.e., the defendants' failure to speak—was not protected under Code of Civil Procedure section 425.16, subdivisions (e)(1) or (e)(2), which applied only to statements or writings, "not the failure to make them." (*Ratcliff,* at p. 1011.) In other words, the anti-SLAPP motion failed because the defendants "point[ed] to no allegations in the complaint of affirmative

15

misrepresentations or concealment and no claims of partial speech." (*Id.* at p. 1012.)

Like the defendants in *Jespersen*, *PrediWave*, *Digerati*, and *Ratcliff*, the Church Firm has been charged with *failing* to act or speak, not with making any affirmative statements or engaging in any specific communicative acts. The firm's alleged failure to act or speak is not a written or oral statement made before, or in connection with an issue under consideration or review by, a judicial body or official proceeding. Therefore, the alleged conduct is not protected under Code of Civil Procedure section 425.16, subdivisions (e)(1) or (e)(2), and the trial court properly denied the anti-SLAPP motion at the first step of the inquiry.[6]

Because the trial court properly found the Church Firm did not satisfy its first-step burden, we do not address whether the causes of action have minimal merit under the second anti-SLAPP prong. (*Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 658 ["Failure to meet [the] initial prong renders the anti-SLAPP statute inapplicable, thereby making unnecessary any determination under the second prong whether [the non-movant] made a prima facie showing"].)

---

[6] The Church Firm relies on *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, to support its claim that its inaction was protected conduct. However, *Suarez* is distinguishable. In that case, the plaintiff alleged the defendant company fraudulently concealed information from the plaintiff that would have given him leverage in the parties' negotiations to settle a civil lawsuit. In particular, the plaintiff alleged the defendant's principal owner asked third parties to transmit information to the defendant's attorney, rather than the owner himself, to shield the information from disclosure under the cloak of the attorney-client privilege. The *Suarez* court concluded this affirmative conduct was protected under Code of Civil Procedure section 425.16, subdivision (e). In the present case, the petition does not contain similar allegations of "affirmative [acts of] nondisclosure and concealment" like the ones at issue in *Suarez*. (*Suarez,* at p. 125.)

16

IV

DISPOSITION

The order denying the anti-SLAPP motion is affirmed.  Respondents are entitled to their appellate costs.

McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


KELETY, J.

17