Filed 4/28/26  JIPC Ventures v. Newkoa CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JIPC VENTURES, INC., | |
| Plaintiff and Respondent, | G065385 |
| v. | (Super. Ct. No. 30-2024-01394156) |
| NEWKOA, LLC, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge. Affirmed.

Law Offices of Gerald S. Ohn, Gerald S. Ohn and Rodney Gi for Defendant and Appellant.

Rutan & Tucker, Steven J. Goon, Kathryn D.Z. Domin and Golsa Honarfar for Plaintiff and Respondent.

Defendant Newkoa, LLC appeals after the trial court denied its Code of Civil Procedure section 425.16 (anti-SLAPP statute) special motion to strike each cause of action brought against it by plaintiff JIPC Ventures, Inc. (JIPC).[1] The court concluded none of the causes of action fall within the scope of the anti-SLAPP statute. Newkoa contends that conclusion was error because all the claims are based on its alleged acts or failure to act regarding the City of Buena Park's (city) consideration of a proposed development project on land adjacent to land owned by Newkoa, and those acts and omissions are protected activity. It further argues JIPC failed to establish the minimal merit of its claims and the court erred in overruling certain objections to JIPC evidence. We conclude, as the trial court did, that none of the claims arise from activity protected under the anti-SLAPP statute, which obviates the need to consider Newkoa's remaining arguments. Accordingly, we affirm the challenged order.

## FACTS

JIPC operates a pizza restaurant with family entertainment on the lower level of a shopping mall owned by Newkoa. After disputes arose between the parties about maintenance of the mall's common areas and access to JIPC's premises, JIPC sued Newkoa on various contract related theories. It thereafter amended its complaint to more than double the number of causes of action.

The operative complaint lists 10 causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the implied covenant of quiet enjoyment, intentional concealment, intentional and negligent interference with prospective economic relations,

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

2

negligence, violations of the California Fire Code (Cal. Code Regs., tit. 24, pt. 9; Fire Code) and the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.; ADA), and declaratory and injunctive relief.

According to the complaint, the only means of accessing JIPC's premises is by descending from the upper level of the mall. To do so, patrons must use either an escalator, an elevator, or the stairs. Although there are two sets of escalators, Newkoa has allegedly decommissioned both sets and indicated its intent to remove at least one set. In addition, the main elevator "is frequently inoperable and in disrepair." As a result, patrons wanting to access JIPC's premises must use the stairs. This allegedly precludes those with certain disabilities from accessing the premises without a manager resorting to using a freight elevator, typically used for delivery of food, supplies, and equipment, to help them descend. However, "the only freight elevator available to JIPC is and has been continuously inoperable and/or malfunctioning," and JIPC was later informed use of the freight elevator for patrons is not allowed.

Separate from the access issues, the complaint alleges Newkoa has failed to adequately maintain the mall's fire alarm and sprinkler system, including the portion of the system located within the premises leased by JIPC. The alarms and sprinklers have allegedly improperly activated on occasion and not activated on others. When the former occurred, JIPC's game room had to be shut down and JIPC was forced to defuse patrons' complaints and issue many refunds.

The one other general area of dispute covered by the complaint concerns parking. JIPC alleges the city approved a development project in 2023 which will reduce the number of mall parking spaces by almost 50 percent. The project, to be developed on third party owned land adjacent to

3

the mall, will consist of apartments and townhomes (the adjacent development project). Newkoa purportedly knew about the proposed project and the public meeting at which the city council considered it, but it did not notify JIPC. The complaint alleges Newkoa intentionally concealed the information so JIPC would not attend the meeting and object to the project. As a result, JIPC allegedly will be left with inadequate parking for its patrons.

Pursuant to the anti-SLAPP statute, Newkoa moved to strike the complaint "as to each cause of action alleged therein." It argued "each of [JIPC's] causes of action against [it] is based on allegations of [Newkoa's] exercise of the right to petition," namely "communications with the [city] and/or . . . activity with respect to public town hall meetings held by the [city]." Identifying the claims as "also stem[ming] from public internet or social media postings made by consumers, Newkoa asserted all the alleged activity fell "squarely . . . within the ambit of" one or more of the protected activity categories specified in the anti-SLAPP statute. It further contended JIPC could not demonstrate a probability of prevailing on any of its claims.

JIPC opposed the motion, asserting Newkoa failed to meet its initial burden of establishing the applicability of the anti-SLAPP statute. Alternatively, it argued its claims had the requisite minimal merit to survive the motion. JIPC supported the latter argument with a declaration from JIPC's director of finance and exhibits attached thereto. In response, Newkoa lodged various objections to the declaration and exhibits.

Following a hearing, the trial court issued an order denying Newkoa's motion, as well as overruling some of its evidentiary objections. The court noted multiple of the causes of action do not mention the parking or consumer comment related matters on which Newkoa focused its motion.

4

And, as for the causes of action that involve parking, the court found they arise from Newkoa's alleged failure to notify JIPC of the meeting at which the city planned to consider the adjacent development project, not any alleged failure by Newkoa to oppose the project. Because the court determined the anti-SLAPP statute did not apply, it did not reach the question of whether JIPC demonstrated the minimal merit of its claims.

Newkoa timely appealed.

DISCUSSION

Newkoa challenges the trial court's denial of its anti-SLAPP motion, contending the court erroneously determined the anti-SLAPP statute does not apply to any of the claims against it. It further argues the trial court erred in denying certain evidentiary objections it made to evidence filed by JIPC in conjunction with its opposition to the motion, and asserts JIPC is unable to demonstrate the minimal merit of its claims. We do not reach the latter arguments because Newkoa fails to show that any of the claims fall within the scope of the anti-SLAPP statute.

I.

ANTI-SLAPP LEGAL PRINCIPLES AND STANDARD OF REVIEW

"The Legislature enacted section 425.16 in response to 'a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619 (*Rand Resources*).) The special motion to strike provided for in the statute is "'intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest.'" (*Ibid.*) By legislative direction, the statute is to "be construed broadly." (§ 425.16, subd. (a).)

5

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) The statute sets forth four categories of protected activity. (§ 425.16, subd. (e).) The focus at this step is identifying the alleged protected acts and determining whether they supply the basis for any claim. (*Bonni*, at p. 1010.) "It does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are 'disregarded at this stage.'" (*Ibid.*)

"Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."'" (*Bonni, supra*, 11 Cal.5th at p. 1009.) This "step of the anti-SLAPP analysis has been described as a summary-judgment-like procedure. [Citation.] The court determines whether '"the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment."' [Citation.] The plaintiff '"may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence."' [Citation.] The defendant may submit evidence in support of its motion. [Citation.] However, '"[t]he court does not weigh evidence or resolve conflicting factual claims."' [Citation.] Rather, the court "accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.'"'" (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 962 (*Billauer*).) Conversely, "[i]f the plaintiff cannot make this showing, the court will strike the claim." (*Bonni*, at p. 1009.)

"On appeal, we review [an anti-SLAPP] motion de novo and independently determine whether the parties have met their respective burdens." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 371.) We employ the same two-step process used by the trial court. (*Billauer, supra*, 88 Cal.App.5th at p. 962.) "'Only a [claim] that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'" (*Ibid.*)

II.

STEP ONE: ARISING FROM PROTECTED ACTIVITY

Newkoa contends all JIPC's claims stem from three types of alleged "acts": (1) Newkoa's communications with the city about the adjacent development project; (2) Newkoa's activity related to the city's public meetings concerning that project; and (3) "public internet or social media postings made by consumers." With the exception of the intentional concealment cause of action, Newkoa does not separately analyze the various claims, types of acts, or categories of protected activity. Instead, it makes a broad, conclusory argument that all the acts fall within the scope of one or more of the four protected activity categories. We conclude Newkoa fails to demonstrate the applicability of the anti-SLAPP statute to any of the claims.

Beginning with the causes of action for violations of the Fire Code and the ADA, the complaint's allegations definitively base the former on Newkoa's failure to maintain a compliant fire alarm and sprinkler system and the latter on its failure to provide a means of access to JIPC's premises for disabled persons. Tellingly, Newkoa does not explain how those acts fall within a category of protected activity. Instead, it seems to wrongly assume that because each cause of action "re-alleges and incorporates by reference"

7

all prior allegations of the complaint, the Fire Code and ADA related claims arise from the parking related matters. Irrespective of any incorporation by reference, the first step of the anti-SLAPP analysis requires closely scrutinizing each claim to determine the activity on which it is based. (See *Bonni, supra*, 11 Cal.5th at p. 1010.) Here, the specific failures alleged in the Fire Code and ADA claims have nothing to do with parking. Because those causes of action do not arise from protected activity, the trial court properly denied Newkoa's motion as to them without moving to step two of the anti-SLAPP analysis.

JIPC contends we need not look at the complaint's other causes of action because Newkoa's combined notice of motion and motion "sought to strike the [complaint] in its entirety." We disagree. First, nothing in *Bonni, supra*, 11 Cal.5th 995, or *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*), the cases cited by JIPC, supports such a position. To the contrary, they make clear a court's obligation is to evaluate which act or set of acts supplies a basis for each claim pled in the complaint and to consider whether the moving party has met its burden of demonstrating applicability of the anti-SLAPP statute to each claim. (*Bonni*, at pp. 1010–1012; *Baral*, at p. 396.) Second, although Newkoa's combined notice of motion and motion referenced the entire complaint, the document indicated it was seeking to have the trial court strike each cause of action within it. Accordingly, we must make a determination regarding step one as to each claim.

Also misdirected is JIPC's reliance on a "gravamen" based approach to the analysis. Although at one time courts were applying a gravamen test in the first step of an anti-SLAPP analysis, the Supreme Court has made clear it is not the proper inquiry. (*Bonni, supra*, 11 Cal.5th at pp. 1009–1011.) Instead, we must first identify each claim for relief pled in the

8

complaint, without being constrained by the way the complaint structures each cause of action. (*Id.* at p. 1010.) Once we identify "each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action," we must determine whether each act or set of acts is protected. (*Ibid.*) If through this analysis it becomes clear a cause of action is a mixed cause of action, meaning "one that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not," we disregard the unprotected acts and reach the second step of the anti-SLAPP analysis with respect to the claims arising from protected activity. (*Ibid.*; see also *Baral, supra*, 1 Cal.5th at p. 396.)

Identifying the act or set of acts which supply a basis for relief, meaning the acts from which a claim arises, involves looking to the legally required elements of a cause of action. (*Bonni, supra*, 11 Cal.5th at p. 1015; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063.) "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'" (*Park*, at p. 1063.) Allegations which are merely incidental, collateral, or provide context, as opposed to supplying an element of a claim, may not be used as a basis for triggering anti-SLAPP protection. (*Bonni*, at p. 1012; *Rand Resources, supra*, 6 Cal.5th at p. 621; *Baral, supra*, 1 Cal.5th at p. 394.)

In addition to forming the basis for the Fire Code and ADA claims, the allegations concerning failure to maintain a compliant fire alarm and sprinkler system and a means of access to JIPC's premises for disabled persons expressly supply a basis for most of the other causes of action in the complaint, including: breach of contract, breach of the implied covenants of quiet enjoyment and good faith and fair dealing, and intentional and

9

negligent interference with prospective economic relations. Because those alleged failures to act are not protected activity under section 425.16, all the claims arising therefrom necessarily survive Newkoa's motion.

For the same reason, the same contract related and interference related claims grounded in allegations about lack of maintenance of the mall's escalators, elevators, roof, and sump pump must remain. Newkoa makes no argument as to how those alleged acts are protected activity, and there is no basis for so concluding.

As for the negligence cause of action, the complaint is not clear which alleged acts form the basis of it. Found on page 27 of the complaint, the cause of action re-alleges and incorporates by reference all allegations preceding it. It then states "NEWKOA's conduct was negligent as outlined hereinabove." Although in some situations the ambiguity, alone, may be fatal to a moving party's ability to demonstrate the claim arises from protected activity (see *Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 218–219; *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 627–628), the ambiguity in this case is resolved by JIPC's briefing. (See *Bonni, supra*, 11 Cal.5th at p. 1017 & fn. 5 [using briefing of party opposing anti-SLAPP motion to provide details about claim not included in complaint].) Both JIPC's opposition to the motion filed in the trial court and its brief on appeal indicate the negligence claim arises from Newkoa's failure to maintain the elevators and escalators in a safe condition, as well as its failure to maintain the mall in compliance with fire safety standards. For the same reason Newkoa did not meet its step one burden regarding the claims previously discussed, it does not meet its step one burden concerning the negligence claim.

Without specifying which claims, Newkoa contends the claims against it "also stem from public internet or social media postings made by consumers." This argument is based on a fundamental misunderstanding of the anti-SLAPP statute. The statute targets "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) In that vein, it provides for a motion to strike one or more causes of action "against a person *arising from any act of that person* in furtherance of the person's right of petition or free speech." (*Id.*, subd. (b)(1), italics added.) Even assuming, arguendo, the consumer activity will be used by JIPC to prove some aspect of a claim, it is not a basis for Newkoa to strike the claim. Suffice to say, act of consumers are not acts by Newkoa.

What remains for us to consider is the only alleged activity on which Newkoa's argument elaborates: the parking related matters. Newkoa contends the claims against it, particularly the intentional concealment claim, arise from its communications with the city concerning the adjacent development project and/or its alleged failure to object to the project at public meetings. In contrast, JIPC contends those allegations simply provide context for the claims. It asserts that to the extent the claims are based on parking-related matters, they "'arise from' Newkoa's . . . *intentional concealment* of an issue it knew would have a significant impact on [JIPC]." A review of the complaint leads us to agree with JIPC.

The parking-related breach of contract claim alleges "NEWKOA wrongfully and intentionally concealed facts from JIPC in efforts to take away JIPC's customer parking at the [m]all." Similarly, the intentional concealment claim alleges, in relevant part, that "NEWKOA intentionally failed to disclose certain facts to JIPC, including facts related to the potential

11

loss of parking at the [m]all due to [the adjacent development project] as detailed hereinabove," and it did so with an "inten[t] to deceive JIPC." And the claims for intentional and negligent interference with prospective economic relations allege, in relevant part, "NEWKOA engaged in wrongful conduct through the breaches outlined hereinabove, including . . . intentionally concealing material facts in order to prohibit JIPC from exercising its rights under the [l]ease and from appearing at the [c]ity [council] meeting and objecting to the [adjacent development project]."

These allegations demonstrate the claims arise from a purported failure to act, as opposed to an affirmative action. Further, they show the claims are not limited to the mere fact of the inaction. Instead, they arise from inaction with a purpose—an intent to deceive so that JIPC would not contest the adjacent development project. This is underscored by the punitive damage allegations included with some of the claims.

"The right to freedom of speech under the First Amendment to the United States Constitution and under Article I, section 2 of the California Constitution, encompasses what a speaker chooses to say, and what a speaker chooses not to say; it is a right to speak freely and also a right to refrain from doing so at all." (*Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 124.) However, "[a] failure to speak cannot fall in any of the first three categories" of anti-SLAPP protected activity because they "protect only 'statement[s] or writing[s],' and not the failure to make them." (*Ratcliff v. The Roman Catholic Archbishop of Los Angeles* (2022) 79 Cal.App.5th 982, 1011.) Thus, "[i]f a failure to speak is protected at all, it must fall within the fourth category, as 'other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'" (*Ibid*.)

12

As the moving party, and as the appellant, Newkoa bears the burden of demonstrating the anti-SLAPP statute's applicability. (*Bonni, supra*, 11 Cal.5th at p. 1009 [anti-SLAPP burdens]; *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 106, fn. 17 [burden on appeal].) But, consistent with deficiencies in its overall briefing, Newkoa does not explain what "public issue" or "issue of public interest" is involved. (*Ibid*.) Nor does it articulate how the alleged omissive conduct was "in connection with" such an issue. (*Ibid*). Those deficiencies are fatal to its parking-related arguments.

Even assuming, arguendo, the adjacent development project would qualify as a public issue or issue of public interest by virtue of the fact the city council considered whether to approve or deny the project at a public meeting, the necessary connection between the issue and Newkoa's alleged conduct is absent. A critical component of the "catchall" provision analysis is "what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–150.) Overall, "'some degree of closeness' between the challenged statements and the asserted public interest [is required]. [Citation.] . . . [T]he statement must in some manner itself contribute to the public debate.'" (*Id.* at p. 150.) That closeness is missing here. The alleged conduct involves omissions vis-à-vis JIPC, not a failure to communicate with the city about the adjacent development project. Newkoa's alleged silence toward its own tenant, even if surreptitiously intended to allow the adjacent development project to be approved by the city, does not have the requisite functional relationship with the public conversation under the circumstances.

13

### III.

#### CONCLUSION

Because we conclude Newkoa failed to meet its burden of demonstrating the anti-SLAPP statute's applicability to any of JIPC's claims, we do not reach the parties' disputes concerning the minimal merit of the claims, including Newkoa's assertion that the trial court erred in overruling certain of its objections to JIPC's evidence. The court properly denied Newkoa's anti-SLAPP motion. We decline JIPC's invitation to decide the issue of attorney fees entitlement related to the appeal. That issue is properly left for the trial court in the first instance.

#### DISPOSITION

The order is affirmed. JIPC is entitled to costs on appeal.


DELANEY, J.


WE CONCUR:



MOTOIKE, ACTING P. J.



GOODING, J.

14