Filed 12/22/25  Ragland v. Wells Fargo Bank CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PAM RAGLAND, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WELLS FARGO BANK, N.A., as Trustee, etc., et al., <br><br> Defendants and Respondents. | G063682 <br><br> (Super. Ct. No. 30-2020-01137118) <br><br> ORDER GRANTING MOTION TO FILE AMENDED PETITION FOR REHEARING, MODIFYING OPINION, AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

Appellant's "Motion for Leave to File Amended and Corrected Petition for Rehearing" is GRANTED pursuant to rule 8.268(b)(4) of the California Rules of Court, notwithstanding that the proposed amended petition violates rule 8.204(c)(5) by exceeding the maximum word count by over 2,000 words. We direct the court to file the amended petition forthwith.

It is ordered that the opinion filed herein on November 20, 2025, be modified as follows:

On page 17, at the end of the last paragraph, after the sentence ending "is not before us in this appeal," add the following footnote:

[4] In her opening brief, Ragland argues the trial court erred by failing to grant her request for judicial notice of certain "exhibits from government and court websites, which should have been used to analyze [the] stricken [fraud cause of action] and [the trust]'s lack of standing." Ragland has failed to provide any legal analysis, or pertinent citations to legal authority, explaining how the subject documents were relevant to the trial court's ruling on the anti-SLAPP motion. In any event, Ragland has failed to show how any error in the trial court's ruling on her request for judicial notice was prejudicial.

As so modified, there is no change in judgment. The amended petition for rehearing is DENIED.

                                                    MOTOIKE, ACTING P. J.

WE CONCUR:


DELANEY, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAM RAGLAND, | |
| Plaintiff and Appellant, | G063682 |
| v. | (Super. Ct. No. 30-2020-01137118) |
| WELLS FARGO BANK, N.A., as Trustee, etc., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Nick A. Dourbetas, Judge. Affirmed. Motion to augment granted in part and denied in part. Request for judicial notice denied.

Pam Ragland, in pro. per., for Plaintiff and Appellant.

Womble Bond Dickinson, Kristin Walker-Probst and David A. Berkley for Defendants and Respondents.

In her fifth amended complaint, plaintiff Pam Ragland asserted a claim for "fraud by concealment/fraudulent misrepresentation" (the fraud cause of action) against, inter alia, defendants Wells Fargo Bank, National Association as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-OPT1 (Wells Fargo), Ocwen Loan Servicing, LLC (Ocwen), and PHH Mortgage Corporation[1] (collectively, the bank defendants). Pursuant to Code of Civil Procedure section 425.16, the bank defendants filed a special motion to strike certain causes of action in the fifth amended complaint (the anti-SLAPP motion), including the fraud cause of action.[2] The trial court granted the motion only as to the fraud cause of action and awarded the bank defendants a fraction of their requested attorney fees on the motion. Ragland argues the court erred by granting the anti-SLAPP motion as to that claim and awarding the bank defendants attorney fees.

We affirm. It is well established settlement communications, upon which the fraud cause of action is based, constitute protected conduct under section 425.16, subdivision (e). For the reasons we explain, Ragland did not meet her burden of establishing a probability of prevailing on that claim. The trial court, therefore, did not err in granting the anti-SLAPP motion with respect to the fraud cause of action.

---

[1] In the respondents' brief, the bank defendants assert Ocwen merged into PHH Mortgage Corporation on June 1, 2019.

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 413, fn. 2.) All further statutory references are to the Code of Civil Procedure unless otherwise specified.

FACTUAL AND PROCEDURAL BACKGROUND

I.

THE COMPLAINT

In March 2020, Ragland initiated this action against, inter alia, the bank defendants, her former landlord Deanna Allen, Allen's son, and his limited liability company Sunyata, LLC. In her original complaint, she alleged, inter alia, the bank defendants were liable to Ragland for their efforts to wrongfully evict her from the property she rented from Allen (the property) following the foreclosure of the property and for their failure to make repairs at the property and otherwise compensate Ragland for the property's substandard conditions.

The original complaint contained 16 causes of action for constructive eviction, unfair business practices, fraud, violation of the warranty of habitability, violation of section 17920.3 of the Health and Safety Code, breach of contract, personal injury, negligence, promissory estoppel, breach of the covenant of quiet enjoyment, unjust enrichment, intentional infliction of emotional distress, negligent infliction of emotional distress, personal property damage, quiet title, and injunctive relief.

II.

THE FIFTH AMENDED COMPLAINT

After a series of demurrers and motions to strike, Ragland filed a 177-page fifth amended complaint again asserting 16 causes of action. The claims included in the fifth amended complaint were not identical to those included in the original complaint. The fifth amended complaint did not reassert the previously asserted claims for constructive eviction, violation of section 17920.3 of the Health and Safety Code, promissory estoppel, unjust enrichment, or injunctive relief, but added claims for violation of Civil Code

section 1940.2, violation of the Uniform Fraudulent Transfer/Voidable Transactions Act (Civ. Code, § 3439 et seq.), conversion, and trespass to chattels, along with the fraud cause of action at issue in this appeal.[3]

III.

SUMMARY OF RELEVANT ALLEGATIONS

The fraud cause of action at issue in this appeal was asserted against the bank defendants and supported by the following allegations.

In December 2017, counsel representing Wells Fargo wrote Ragland a letter informing her that Allen had filed a wrongful foreclosure lawsuit against Wells Fargo to get the property back. At that point in time, Ragland had made various demands on the bank defendants but had not yet filed a lawsuit herself against them.

In the letter, counsel informed Ragland that Wells Fargo proposed a joint settlement discussion. Ragland "pursued joint settlement" even though she disagreed with lumping Allen's lawsuit together with Ragland's claims in which she sought "to get her money back."

---

[3] The fraud cause of action was based on some of the same allegations which supported the separate fraud claim Ragland previously asserted in the original complaint and reasserted in the fifth amended complaint as the third cause of action. The trial court sustained without leave to amend the bank defendants' demurrer challenging that original fraud claim as it appeared in the fifth amended complaint. Neither the court's ruling on the bank defendants' demurrer, nor the original fraud claim, are at issue in this appeal.

The bank defendants also demurred to, inter alia, the fraud cause of action which was asserted as the 13th cause of action in the fifth amended complaint. The trial court ruled the demurrer to the fraud cause of action was moot given the court's concurrent grant of the bank defendants' anti-SLAPP motion as to that cause of action.

4

A joint meeting was scheduled for May 2018, but shortly before the scheduled date, Allen cancelled the meeting. Ragland "instructed her attorneys to continue pursuing resolution, or she would have to sue." But the bank defendants insisted the meeting "must include . . . Allen."

Although Allen promised, via her attorney, to reschedule the meeting, it never happened. Instead, Allen's attorney "put off" Ragland and her attorneys about rescheduling the meeting. Ragland was thereafter ignored by Wells Fargo, Allen, and Allen's attorney.

Unbeknownst to Ragland, almost a year later, in April 2019, Sunyata was created; Allen's son was its sole manager. Also unbeknownst to Ragland at the time, in May 2019, Allen and the bank defendants mediated and ultimately settled Allen's wrongful foreclosure lawsuit. The terms of the settlement included the bank defendants agreeing to the transfer of the property to Sunyata "for free," and the dismissal of Allen's lawsuit, which dismissal occurred on June 3, 2019. Ragland thereafter received a letter from the bank defendants informing her that Wells Fargo no longer owned the property. Ragland believed the bank defendants "jointly conspired to settle [Allen's] lawsuit without repaying . . . Ragland" for repairs to avoid that liability.

The fraud cause of action was specifically predicated on the allegations the bank defendants: (1) "pretended" on December 30, 2017, they would "'jointly' address [Ragland's] claim, in conjunction with . . . Allen" in order to "burn . . . Ragland's statute of limitations to sue over these acts," but "[i]n reality they never intended to do so"; and (2) concealed from Ragland that they conspired with Allen and others in Allen's family to transfer the property to Sunyata and thereby "try to cheat . . . Ragland of money they owe[d] her."

5

## IV.

### THE TRIAL COURT GRANTS THE ANTI-SLAPP MOTION AS TO THE FRAUD CAUSE OF ACTION AND DENIES RAGLAND'S MOTION FOR RECONSIDERATION

By filing the anti-SLAPP motion, the bank defendants sought to strike from the fifth amended complaint the fraud cause of action and also the claims for violation of the California Uniform Fraudulent Transfer Act/Uniform Voidable Transaction Act (Civ. Code, § 3439 et seq.), conversion, and trespass to chattels. The bank defendants requested an award of attorney fees in connection with that motion in the amount of $11,640.60, pursuant to section 425.16, subdivision (c)(1). The anti-SLAPP motion was supported by the declaration of the bank defendants' attorney.

Ragland filed an opposition to the anti-SLAPP motion which was supported by her declaration.

The trial court granted the anti-SLAPP motion as to the fraud cause of action. The court concluded that claim arose out of protected settlement negotiations and Ragland failed to meet her burden of showing the claim was legally sufficient and factually substantiated. The court awarded the bank defendants attorney fees with respect to the fraud cause of action in the amount of $3,016 which the court found "reasonable and necessary." The court denied the anti-SLAPP motion as to the three other challenged claims.

Ragland filed a motion for reconsideration of the trial court's order granting the anti-SLAPP motion with respect to the fraud cause of action. The trial court denied the motion for reconsideration and awarded the bank defendants additional attorney fees in the amount of $5,904.

Ragland filed a timely notice of appeal.

6

## V.

### MOTION TO AUGMENT AND REQUEST FOR JUDICIAL NOTICE

During the pendency of this appeal, Ragland filed a request the record be augmented to include the following documents: (1) the summons directed to Wells Fargo Bank N.A., a National Corporation, for the first amended complaint, filed on March 18, 2020 (exhibit A); (2) minute orders dated August 13, 2021, and September 3, 2021, which include rulings on various demurrers, motions to strike as to the second and third amended complaints, a motion to deem requests for admission admitted, a motion to dismiss, and a motion for reconsideration (exhibits B & F); (3) a notice of ruling, with attached exhibits including a proposed judgment, Ragland's declaration, and the statement of decision, filed April 26, 2021, in the unlawful detainer action *Sunyata, LLC v. Pam Ragland* (Super. Ct. Orange County, 2021, No. 30-2019-01114847) (exhibit C); (4) two substitutions of attorney, both filed May 12, 2022, and a declaration regarding the bank defendants' association of counsel dated May 9, 2022 (exhibits D, E & I); (5) Wells Fargo and Ocwen's motion to dismiss filed on September 13, 2021 (exhibit G); and (6) a proof of service dated October 18, 2020 (exhibit H).

With the exception of exhibit C, each of the identified documents (exhibits A, B & D–I) was part of the trial court record. We therefore grant the motion to augment the record with those exhibits. (Cal. Rules of Court, rule 8.155(a)(1)(A).) We deny the request to augment the record with exhibit C because it is from a different case and was not otherwise before the court in this case. (*In re Marriage of Forrest & Eaddy* (2006) 144 Cal.App.4th 1202, 1209 ["the record cannot be 'augmented' with material that was not before the trial court"].)

Ragland also filed a request that we take judicial notice of the exact same documents that are the subject of her motion to augment the record on appeal. Because as discussed *ante*, we granted Ragland's motion to augment the record with exhibits A, B, and D through I, we deny her request to take judicial notice of them.

We decline to take judicial notice of exhibit C because it is irrelevant to the resolution of the issues presented in this appeal. (Evid. Code, § 350.)

DISCUSSION

I.

APPLICABLE ANALYTICAL FRAMEWORK AND STANDARD OF REVIEW

The anti-SLAPP statute aims to shield defendants from "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) To curb such abuses of the civil justice system, "the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) The statute must "be construed broadly." (§ 425.16, subd. (a).)

Courts evaluate anti-SLAPP motions through a two-step process. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

8

First, "the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*), quoting § 425.16, subd. (b)(1); see § 425.16, subd. (e) [defining protected activity].) Second, if the defendant satisfies the first step, the plaintiff must show "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The plaintiff must establish the claim has "at least 'minimal merit.'" (*Park, supra*, 2 Cal.5th at p. 1061.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park, supra*, 2 Cal.5th at p. 1067.) "'"Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."'" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

II.

FIRST STEP: THE COMPLAINT ESTABLISHES THE FRAUD CAUSE OF ACTION ARISES FROM PROTECTED ACTIVITY

A claim is only subject to an anti-SLAPP motion if it "aris[es] from" protected activity. (§ 425.16, subd. (b)(1).) Section 425.16, subdivision (e), defines protected activity to include any statement made in a judicial proceeding or in connection with an issue under consideration by a judicial body. (§ 425.16, subd. (e)(1)–(2).) "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.)

9

Whether based on the allegation the bank defendants "pretended" they would jointly mediate Ragland's claims and Allen's lawsuit, or on the allegation they concealed from Ragland their agreement to settle Allen's lawsuit by transferring the property to Sunyata, the fraud cause of action indisputably arises out of the bank defendants' conduct of mediating Allen's dispute and ultimately settling Allen's wrongful foreclosure lawsuit.

It is well established settlement negotiations, whether occurring while a suit is pending or those preceding the filing of a suit, "are protected activity for anti-SLAPP purposes." (*Bonni, supra*, 11 Cal.5th at p. 1024.) Acts or omissions in the context of settlement negotiations fall within the protection of section 425.16, subdivision (e)(2) as they involve "statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body." (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95 ["because settlement negotiations are regarded as an exercise of the right to petition, communications during such negotiations are regarded as having been made in connection with the underlying lawsuit for purposes of section 425.16, subdivision (e)(2)"]; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 958 [trial court erred in concluding claims based on the defendant's alleged conduct of having secretly negotiated a settlement agreement in a prior case did not arise from protected activity]; *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 908 ["An attorney's communication with opposing counsel on behalf of a client regarding pending litigation directly implicate the right to petition and thus is subject to a special motion to strike"].)

"The protection applies, even against allegations of fraudulent promises made during the settlement process." (*Suarez v. Trigg Laboratories,*

10

*Inc.* (2016) 3 Cal.App.5th 118, 123; see *Bonni, supra*, 11 Cal.5th at p. 1025 ["Although [the plaintiff] alleges fraud in the course of [settlement] negotiations, that allegation does not remove them from the definition of protected activity"].) In *Suarez v. Trigg Laboratories, Inc., supra*, 3 Cal.App.5th at page 120, the plaintiff sought recission of a settlement agreement based on the allegation the defendant had fraudulently concealed information. Affirming the trial court's order granting the defendant's anti-SLAPP motion, the appellate court stated "the allegedly wrongful conduct—concealing or failing to disclose the potential purchase—occurred as an explicit part of the settlement strategy" for a prior case and constituted protected activity. (*Ibid.*)

Here, the fraud cause of action is entirely based on the bank defendants' alleged acts or omissions in the context of their efforts to settle Allen's wrongful foreclosure lawsuit. Specifically, it is based on allegations the bank defendants failed to include Ragland in their settlement negotiations of the wrongful foreclosure lawsuit and further failed to disclose to her their settlement of that lawsuit by, inter alia, agreeing to the transfer of the property to Sunyata. As such conduct in the context of settlement negotiations constitutes protected activity within the meaning of section 425.16, subdivision (e)(1), the trial court correctly concluded the fraud cause of action arose out of protected activity.

## III.

### SECOND STEP: RAGLAND DID NOT CARRY HER BURDEN OF SHOWING A PROBABILITY OF PREVAILING ON THE MERITS OF THE FRAUD CAUSE OF ACTION

As discussed *ante*, once the bank defendants met their burden of demonstrating Ragland's fraud cause of action arose from protected conduct, the burden shifted to Ragland to demonstrate the fraud cause of action was

11

"legally sufficient and factually substantiated." (*Baral v. Schnitt, supra,* 1 Cal.5th at p. 396.) A plaintiff cannot meet this burden by relying on its own pleading but must present admissible evidence. (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 49.) Ragland failed to carry her burden.

*A. Fraudulent Misrepresentation*

"The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the plaintiff suffered resulting damages." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 199–200.)

There is no evidence Wells Fargo made a false statement of fact to Ragland in December 2017 when it proposed scheduling a meeting to jointly discuss Ragland's claims and Allen's wrongful foreclosure action. In fact, such a meeting was set for May 2018, but cancelled shortly before the scheduled date, not by the bank defendants, but by Allen who thereafter ignored efforts to reschedule the meeting. That one year later in 2019, the bank defendants were able to negotiate a settlement of Allen's wrongful foreclosure lawsuit without Ragland's involvement does not show their initial proposal to hold a joint meeting was a false proposal made with the intention to deceive Ragland.

In addition, Ragland does not produce any evidence showing she suffered any damages by relying on any false representation by the bank defendants. Although she contends the bank defendants pretended they would jointly address Ragland's claims and Allen's lawsuit in order to "burn

12

[Ragland's] statute of limitations to sue over these acts," she does not identify any claim that became statutorily barred by the time the bank defendants settled the wrongful foreclosure action. There are no other allegations, much less evidence, showing how Ragland was otherwise induced to alter her position to her detriment.

*B. Fraudulent Concealment*

"""[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.""" (*Knutson v. Foster* (2018) 25 Cal.App.5th 1075, 1091.)

Ragland did not produce evidence or cite relevant legal authority showing the bank defendants owed her a duty to disclose the terms of the settlement with Allen, including the agreement for the transfer of the property to Sunyata. Furthermore, Ragland did not make any showing how she was injured or otherwise sustained damages as the result of any such concealment of fact.

As Ragland failed to carry her burden of showing a probability of prevailing on the fraud clause of action, the trial court correctly granted the anti-SLAPP motion as to that claim.

Ragland also challenges the trial court's order awarding the bank defendants (1) a total of $3,016 in attorney fees with respect to the anti-SLAPP motion; and (2) an additional $5,904 in attorney fees incurred in connection with Ragland's unsuccessful motion for reconsideration of the court's order granting the anti-SLAPP motion in part.

"An award of attorney fees to a prevailing defendant on an anti-SLAPP motion is mandatory. [Citations.] We review the trial court's determination of the amount of the award for abuse of discretion and will not set aside the award "'absent a showing that it is manifestly excessive in the circumstances.'" [Citation.] In this regard, we are mindful that '[t]he "'experienced trial judge is the best judge of the value of professional services rendered in [her] court, and while [her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'"' [Citation.] 'An abuse of discretion is shown when the award shocks the conscience or is not supported by the evidence.'" (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 285.)

Ragland questions whether the bank defendants are prevailing parties eligible for an attorney fee award given they only prevailed in the anti-SLAPP motion with respect to the fraud cause of action and lost with respect to the other claims they challenged in that motion.

"The term "'prevailing defendant,'" as used in section 425.16, subdivision (c)(1), is not defined, and it is unstated whether a defendant who prevails on some, but not all, of the claims challenged in his or her anti-SLAPP motion is entitled to fees and costs. [Citation.] But as a general rule, a

defendant who prevails in part in bringing a special motion to strike is entitled to fees and costs, subject to the trial court's determination of the appropriate amount awardable based upon the defendant's partial success. [Citations.] The entitlement to fees and costs where the defendant prevails in part, however, is not absolute. . . . '[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion.' The trial court's determination of whether a defendant prevailed such that he or she is entitled to fees and costs is reviewed for abuse of discretion." (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 232–233.)

Here, the bank defendants were successful in obtaining an order striking one of the causes of action asserted against them. While the anti-SLAPP motion was not granted in full, as in *Maleti v. Wickers, supra*, 82 Cal.App.5th at page 233, in which the defendants' anti-SLAPP motion prevailed in striking one of two causes of action against them, the bank defendants' "success was not trivial or a pyrrhic victory." Instead, the order striking the fraud claim "had the practical benefit to [the bank defendants] of narrowing the litigation, thus impacting discovery, motion practice, and trial preparation." (*Ibid*.) Consequently, "'the results of the motion were [not] so insignificant that [the bank defendants] did not achieve any practical benefit from bringing the motion.'" (*Ibid*.)

*Moran v. Endres* (2006) 135 Cal.App.4th 952, cited by Ragland in her opening brief, is distinguishable. In that case, the trial court partially granted a special motion to strike but in doing so, the court did not strike any separate cause of action. (*Id*. at p. 954.) In concluding the moving parties were properly denied attorney fees and costs, the *Moran* court explained: "To

15

be blunt, [the] defendants' motion accomplished nothing, except that [the] plaintiffs were put to the cost of defending the motion. The possible recovery against [the] defendants did not change. The factual allegations which [the] defendants had to defend did not change. The work involved in trying the case did not change. . . . The case was essentially the same after the ruling on the special motion to strike as it was before." (*Id.* at p. 955.)

Unlike the circumstances in *Moran*, here, in succeeding in having the fraud cause of action struck, the bank defendants no longer need to defend against fraud liability based on allegations they failed to follow through with joint settlement discussions and disclose to Ragland their decision to transfer the property to Allen in settlement of her wrongful foreclosure lawsuit. The bank defendants thus derived practical benefit from filing their motion.

Although Ragland also contends the bank defendants' fees were "overstated" for both the anti-SLAPP motion and for the motion for reconsideration, she does not provide any analysis supporting her contention. The record shows the bank defendants filed an opposition to the motion for reconsideration. Both the anti-SLAPP motion and the opposition were supported by the bank defendants' counsel's declarations attesting to the services they provided to, and the attorney fees incurred by, the bank defendants.

The trial court expressly found an attorney fees award of $3,016 (a fraction of the $11,640.60 amount requested in the anti-SLAPP motion) for fees incurred by the bank defendants in successfully moving to strike the fraud cause of action was "reasonable and necessary." The court later awarded the bank defendants an additional amount of $5,916.95 for attorney fees they incurred in opposing Ragland's unsuccessful motion for

16

reconsideration of that ruling. Ragland does not provide legal analysis or cite relevant legal authorities showing how the attorney fee awards constituted an abuse of discretion.

We find no error.

V.

RAGLAND FAILS TO SHOW WELLS FARGO AND OCWEN LACKED STANDING TO FILE THE ANTI-SLAPP MOTION IN THE FIRST PLACE

In her opening brief, Ragland argues neither Wells Fargo nor Ocwen had standing to file the anti-SLAPP motion in the first place. Her argument is based on Wells Fargo's and Ocwen's statements throughout the litigation, including in their answer to the fifth amended complaint, that (1) the proper Wells Fargo party (as supported by the trust deed at issue in this litigation) is "Wells Fargo Bank, National Association as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-OPT1," which party was erroneously sued as "'Wells Fargo Bank, a national corporation'"; and (2) the proper Ocwen party is "Ocwen Loan Servicing, LLC" which party was erroneously sued as "'Ocwen Financial Corporation.'" Ragland challenges Wells Fargo and Ocwen's standing to file the anti-SLAPP motion in the first place because, inter alia, there was no valid assignment of the loan on the property to Wells Fargo and that "the deeds are counterfeit."

Nothing in our record shows Wells Fargo and Ocwen are not proper parties in this action. Contrary to Ragland's suggestion, whether a default should be entered with respect to any party in this action is not before us in this appeal.

17

DISPOSITION

The order is affirmed. Respondents to recover costs on appeal.



MOTOIKE, ACTING P. J.

WE CONCUR:


DELANEY, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.